AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Blue Motorola Moto G Play Cellphone<br>Model: Moto G Play<br>Seized as FP& F: 2026255200004501 Item: 002 | **FILED**<br>**Dec 31 2025**<br>CLERK, U.S. DISTRICT COURT<br>SOUTHERN DISTRICT OF CALIFORNIA<br>BY    s/ ClaudiaCarranza    DEPUTY |

)
)
)
)    Case No.   **2:25-mj-09033**
)
)
)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:

See Attached Affidavit of Border Patrol Agent Karla Buenrostro incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Karla Buenrostro*
_____
*Applicant's signature*

Border Patrol Agent Karla Buenrostro
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date:  12/30/25
_____        _____
*Judge's signature*

City and state:   El Centro, California        HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
_____
*Printed name and title*

## ATTACHMENT A-1
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**  Blue Motorola Moto G Play Cellphone
Model: Moto G Play
Seized as FP& F: 2026255200004501 Item: 002
Seized from Alonso LAU-Marquez
**(Target Device #1)**

 

The **Target Devices** are currently in possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

**ATTACHMENT B**
ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A3 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of October 15, 2025, up to and including November 16, 2025, and is limited to the following:

a.    tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b.    tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c.    tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d.    tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e.    tending to identify the user of, or persons with control over or access to, the Target Device;

f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

1

2                                          **AFFIDAVIT**

3          I, Karla Buenrostro, United States Border Patrol Agent, having been duly sworn,

4    depose and state as follows:

5                                          **INTRODUCTION**

6          1.      I submit this affidavit in support of an application for warrant(s) to search

7    the following electronic device(s):

8    **A-1:**              Blue Motorola Moto G Play Cellphone
9                          Model: Moto G Play
                           Seized as FP& F: 2026255200004501 Item: 002
10                         Seized from Alonso LAU-Marquez
11                         **(Target Device #1)**

12   **A-2:**              Green Apple iPhone 13 Cellphone
13                         Model: iPhone 13
                           Seized as FP& F: 2026255200004501Item: 003
14                         Seized from Jesus Antonio MACHADO-Leon
15                         **(Target Device #2)**

16   **A-3:**              Motorola Edge 20 Cellphone
17                         Model: Edge 20
                           Seized as FP& F: 2026255200004501Item: 004
18                         Seized from Rosalba PEREZ-Feria
19                         **(Target Device #3)**

20   as further described in Attachments A-1 to A-3 and to seize evidence of a crime,

21   specifically, violations of Title 8, United States Code, Section 1324 (Transportation of

22   Illegal Aliens), as further described in Attachment B.

23         2.      The requested warrant relates to the investigation and prosecution of Alonso

24   LAU-Marquez (LAU) for transportation of illegal aliens Jesus Antonio MACHADO-Leon

25   (MACHADO-Leon) and Rosalba PEREZ-Feria (PEREZ-Feria) (collectively, the "Material

26   Witnesses"), in violation of Title 8 U.S.C. § 1324 within the Southern District of California.

27   The Target Devices were seized from LAU, MACHADO-Leon and PEREZ-Feria on or

28   about November 15, 2025, incident to the arrests of LAU and the Material Witnesses. The

                                                 1

Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3.    Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents.  Dates and times are approximate.

## EXPERIENCE AND TRAINING

4.    I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since August 12, 2019, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The Border Patrol Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), training in Titles 8,18, 19, 21 and 31 of the United States Code, criminal law, and statutory authority.

5.    I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6.    Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into

the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7.    The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8.    Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including,

for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9.    This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a.    tending to indicate efforts to smuggle aliens from Mexico into the United States;

b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c.    tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d.    tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e.    tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

//

//

4

**FACTS SUPPORTING PROBABLE CAUSE**

10.    On November 15th, 2025, Border Patrol Agent (BPA) M. Morales and his Canine partner, Arok, were conducting line watch operations in the El Centro Station area of operation. BPA Morales and his Canine partner, Arok, are a certified United States Border Patrol canine detection team.  BPA Morales and Canine Arok are certified in the detection of concealed humans and the odors of marijuana, cocaine, methamphetamine, heroin, and their derivatives and ecstasy.

11.    At approximately 1:13 p.m. a Remote Video Surveillance System (RVSS) operator relayed information that a motorcycle was traveling north from the 20 Check with three riders. All three riders were wearing tan clothing; the motorcycle was painted dark green.

12.    BPA Morales was traveling southbound on Brockman Road when he encountered three people wearing tan clothing on a motorcycle traveling northbound. BPA Morales turned his vehicle around to follow and conduct a vehicle stop. BPA Morales observed that the motorcycle did not have a license plate and was painted dark green. As BPA Morales approached the motorcycle, he activated his emergency lights and siren, but the motorcycle failed to stop. The motorcycle continued to travel north on Brockman Road and then traveled west on McCabe Road. From McCabe Road the motorcycle continued west on a dirt field road and followed it northbound towards Kramer Road. Once the motorcycle crossed Kramer Road it entered a driveway of a residence near W. Kramer Road, El Centro CA, 92243.

13.    The motorcycle crossed north through the residence and attempted to drive through concrete barriers on the north end of the residence. When the motorcycle slowed down to pass through the concrete barriers the driver lost balance and dropped the motorcycle before entering through the concrete barriers. All three riders fell off the motorcycle then got up and started to run through the concrete barriers.  At that time, BPA Morales exited his vehicle and started to run towards the driver later Identified as Alonso LAU-Marquez and placed him under arrest. The other two riders later identified as Rosalba

5

PEREZ-Feria (PEREZ) and Jesus MACHADO-Leon (MACHADO) continued to run northeast towards various types of farm equipment.

14.     Border Patrol Agent T. Sheldon arrived at the scene and took custody of LAU and placed him in his Border Patrol vehicle. BPA Morales deployed his canine partner Arok to search for the other two riders.  BPA Morales searched the farm equipment and followed footprints from the scene. Eventually Canine Arok alerted by barking and found PEREZ and MACHADO attempting to hide from apprehension from Border Patrol Agents behind parked vehicles on the north side of an Equipment business by Silsbee Rd, El Centro CA, 92243. All three subjects were arrested and transported to the El Centro Sector Processing Center for further processing.

15.     During a Post Miranda Sworn Statement, LAU understood his rights and was willing to answer questions and give a statement without the presence of an attorney. The subject stated his true and correct name is Alonso LAU-Marquez.  LAU stated that he is a citizen and national of Mexico without the necessary legal documents to enter, pass through, or remain in the United States. LAU admitted to illegally entering the United States on November 15, 2025, through the International Boundary Fence (IBF). LAU stated someone made a hole through the IBF and stated the smugglers made a map of where to drive. LAU stated he was told to arrive near a tree and hide, and that was when Border Patrol arrived and arrested them. LAU stated that when Border Patrol attempted to stop him, he stopped the motorcycle he was driving and was taken to the ground and handcuffed.  LAU stated that he saw Agents looking for the rest of the subjects that were with him. LAU does not know how many miles north of the IBF he was arrested. LAU stated this was the first time being arrested by United States Border Patrol.

16.     During post-Miranda statement subject stated his full name is Jesus Antonio MACHADO-Leon (MACHADO).  MACHADO stated he is a citizen of Mexico. MACHADO stated he was previously removed from the United States recently but does not remember the exact date. MACHADO stated he intended to return to the United States illegally, today, November 15, 2025. MACHADO stated he entered the United States this

6

time by using a motorcycle. MACHADO states he does not possess the necessary legal documents to enter, pass through, or remain in the United States. MACHADO stated when he boarded the motorcycle, there were two other people, a driver, and a woman, and MACHADO was the last one. MACHADO stated his uncle arranged his smuggling arrangements and paid $1500.00 USD with a smuggler named "Mario". MACHADO stated he was told he was going to cross in a vehicle into the United States and did not know it was a motorcycle. MACHADO stated they crossed the motorcycle through the fence, MACHADO stated the bollard of the fence moved towards them giving them the space to go through the fence. MACHADO stated that they were apprehended approximately 25 to 30 minutes after crossing the International Boundary Fence. MACHADO stated he felt his life was in danger while riding the motorcycle as he did not have any restraint or safety measures. MACHADO was presented with six pack photo line-up and positively identified picture #1 as the driver of the motorcycle which he was arrested in. Picture #1 depicts LAU-Marquez.

17.    During a Post-Miranda Sworn Statement subject stated her full name is Rosalba PEREZ-Feria (PEREZ). PEREZ stated she is a citizen of Mexico born in Mexico. PEREZ admitted to illegally entering the United States on today's date, November 15, 2025. PEREZ stated she entered through the fence and does not know what city she was in when crossing into the United States. PEREZ stated she intended to go to Los Angeles, California. PEREZ states she does not possess the necessary legal documents to enter, pass through, or remain in the United States. PEREZ stated this is the first time being arrested by United States Border Patrol. PEREZ stated that she was in the United States for approximately 30 minutes after entering the United States. PEREZ states she took a flight from Oaxaca, Mexico to Mexicali Mexico after making smuggling arrangements.

18.    During a search incident to the arrests of LAU and the Material Witnesses, three phones were located. A blue Motorola Moto G Play cellphone was found on LAU's person (Target Device #1) and LAU claimed ownership of the Target Device. A Green Apple iPhone 13 Cellphone was found on MACHADO's person (Target Device #2) and

MACHADO claimed ownership of the Target Device. A Motorola Edge 20 Cellphone was found on PEREZ's person (Target Device #3) and PEREZ claimed ownership of the Target Device. All cellphones were seized as evidence.

19.    I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement.  In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event.  Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts.  Given this, I respectfully request permission to search the Target Devices for data beginning on October 15, 2025, up to and including November 16, 2025, the day after the arrest of LAU and the Material Witnesses.

## METHODOLOGY

20.    It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network.  Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices

8

1  that are not subject to forensic data acquisition or that have potentially relevant data stored

2  that is not subject to such acquisition, the examiner must inspect the device manually and

3  record the process and the results using digital photography. This process is time and labor

4  intensive and may take weeks or longer.

5          21.     Following the issuance of this warrant, a case agent familiar with the

6  investigation will collect the Target Devices and subject them to analysis. All forensic

7  analysis of the data contained within the telephones, and their memory cards will employ

8  search protocols directed exclusively to the identification and extraction of data within the

9  scope of this warrant.

10         22.     Based on the foregoing, identifying, and extracting data subject to seizure

11  pursuant to this warrant may require a range of data analysis techniques, including manual

12  review, and, consequently, may take weeks or months. The personnel conducting the

13  identification and extraction of data will complete the analysis within ninety (90) days of

14  the date the warrant is signed, absent further application to this Court.

15  / /

16  / /

17  / /

18  / /

19  / /

20  / /

21  / /

22  / /

23  / /

24  / /

25  / /

26  / /

27  / /

28  / /

**CONCLUSION**

23.    Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that LAU and the Material Witnesses used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by LAU, the Material Witnesses and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Karla Buenrostro*
Karla Buenrostro, Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 30th day of December 2025.

_____ 2:20 p.m._____
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

10

## ATTACHMENT A-1
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**  Blue Motorola Moto G Play Cellphone
Model: Moto G Play
Seized as FP& F: 2026255200004501 Item: 002
Seized from Alonso LAU-Marquez
**(Target Device #1)**

 

The **Target Devices** are currently in possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**          Green Apple iPhone 13 Cellphone
Model: iPhone 13
Seized as FP& F: 2026255200004501Item: 003
Seized from Jesus Antonio MACHADO-Leon
**(Target Device #2)**




The **Target Devices** are currently in possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT A-3
## PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:**          Motorola Edge 20 Cellphone
                  Model: Edge 20
                  Seized as FP& F: 2026255200004501 Item: 004
                  Seized from Rosalba PEREZ-Feria
                  **(Target Device #3)**



The **Target Devices** are currently in possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

**ATTACHMENT B**
ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A3 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of October 15, 2025, up to and including November 16, 2025, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.